Steven E. Young (SBN 63278)
email: steven.young@practus.com
Andrew W. Heger (SBN 194870)
email: Andrew.heger@practus.com
PRACTUS, LLP
16501 Ventura Boulevard, Suite 304
Encino, CA 91436
Telephone: (818) 641-5001

Duane H. Mathiowetz (CA #111831)
email: duane.mathiowetz@practus.com
PRACTUS, LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Phone: 415-501-0350

Attorneys for Plaintiffs, Haggan Iskenderian,
Hovsep Kedikian, Cecille Kedikian, and
Hagop Marjik

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYGAN ISKENDERIAN, HOVSEP KEDIKIAN, CECILLE KEDIKIAN, and HAGOP MARKIK<br><br>                    Plaintiffs<br><br>v.<br><br>ZANKOU ENTERPRISES, INC., RITA ISKENDERIAN, VARTKES ISKENDERIAN, STEVE ISKENDERIAN, ARA ISKENDERIAN, and DIKRAN ISKENDERIAN,<br><br>                    Defendants. | Case No.: 25-cv-07738-WLH-AJRx<br><br>**SECOND AMENDED COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS; DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP; DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT; UNFAIR COMPETITION UNDER THE LANHAM ACT; UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODE § 17200; BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING; AND IMPOSITION OF CONSTRUCTIVE TRUST**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiffs Haygan Iskenderian, Hovsep Kedikian, Cecille Kedikian, and Hagop Marjik (collectively, "Plaintiffs") for their Complaint against Defendants Zankou Enterprises, Inc. and Rita Iskenderian, Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian (the "Rita Iskenderian Family [or, "RIF"] Defendants") (collectively, Defendant Zankou Enterprises, Inc. and the RIF Defendants are referred to as "Defendants")   allege, on knowledge as to themselves and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs seek cancellation of seven federally registered marks which Defendants allege are being infringed by Plaintiffs' use in their restaurant business for which Defendants have threatened legal action.   At least one of said marks, TARNA, was used by both Plaintiffs and Defendants long before Defendants' predecessor applied for the mark.  Defendants have also breached their fiduciary duty and violated the unfair competition provisions of the Lanham Act and California Business & Professions Code by precluding Plaintiffs' fair and unhampered use of a federally registered service mark, ZANKOU CHICKEN, that was deemed to be jointly and equally owned by predecessors of both Plaintiffs and RIF Defendants, or some of them) pursuant to a Court order dated March 21, 2005. Plaintiffs therefore seek an accounting and damages, and that a constructive trust be imposed for profits generated by Defendants' use of the jointly-owned mark to the exclusion of Plaintiffs.  Finally, Plaintiffs seek declaratory judgment that they have not infringed any lawfully registered trademarks belonging to Defendants.

## PARTIES

2.     Plaintiffs Haygan Iskenderian, Hovsep Kedikian, Cecille Kedikian, and Hagop Marjik are residents of the County of Los Angeles, State of California.

SECOND AMENDED COMPLAINT

3.     Each Plaintiff holds an undivided equal interest in the ZANKOU CHICKEN service mark as surviving relatives and are beneficiaries directly or indirectly of the 2002 Markrid Iskenderian Living Trust, as more specifically described in the schematic attached hereto as Exhibit A, the Court Decision dated March 21, 2005, attached hereto as Exhibit B, and discussed in paragraphs 25 - 32 below.

4.     Each of Defendants Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian are the sons of Rita and the late Mardiros Iskenderian.

5.     The Defendants own and operate ZANKOU CHICKEN restaurants in Glendale, Van Nuys, Anaheim, Pasadena, Burbank, Santa Monica/West Los Angeles, West Hollywood, Valencia, Downtown Los Angeles, Huntington Beach, and Long Beach, California.

6.     Plaintiffs own and operate ZANKOU CHICKEN restaurants in Hollywood, Tarzana, Granada Hills and Thousand Oaks, California.

7.     Each of the two groups of restaurants operated by Plaintiffs and the Defendants serve the same or similar dishes, all based on the same type of chicken cooked the same way, served with a secret proprietary garlic paste, often with fresh vegetables, humus, and pita bread.

8.     On information and belief, Defendant Zankou Enterprises, Inc. is a California Corporation with a principal place of business at 2360 E 48th Street, Vernon, California 90058, and does business primarily, if not exclusively, in Los Angeles and Orange Counties as Zankou Chicken Restaurants.  RIF Defendants Rita Iskenderian, Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian are relatives and are direct or indirect beneficiaries of said 2002 Markrid Iskenderian Living Trust, as set forth in the attached schematic as Exhibit A, the

SECOND AMENDED COMPLAINT

Court Decision dated March 21, 2005, attached as Exhibit B, and discussed in paragraph 32, below. On information and belief, Rita Iskenderian is Chief Executive Officer and Secretary of Zankou Enterprises, Inc., and Vartkes Iskenderian is Chief Financial Officer of Zankou Enterprises, Inc.

9.     On information and belief, the RIF Defendants are the driving force behind Zankou Enterprises' business, with a direct financial interest in Zankou Enterprises' business as well as ultimate responsibility for the operation of Zankou Enterprise, Inc. and for any and all unlawful acts carried out in the name of Zankou Enterprise, Inc.

10.    On information and belief, Zankou Enterprises, Inc. is exclusively controlled by the RIF Defendants. Thus, the RIF Defendants personally and directly assert complete dominion and control over Zankou Enterprises, Inc. such that every action of Zankou Enterprises Inc. is carried out at the instruction and sole discretion of the RIF Defendants.

11.    On information and belief, Defendant Zankou Enterprises, Inc. does not observe corporate formalities and are otherwise operated to further the RIF Defendants' personal endeavors and interests.

12.    On information and belief, the RIF Defendants purposefully under-capitalize Zankou Enterprises, Inc. for the purpose of defrauding potential judgment creditors.

13.    On information and belief, the RIF Defendants also operate Zankou Enterprises, Inc. as their alter-egos, not only by grossly undercapitalizing the company, but also by ignoring corporate formalities, keeping no minutes of any corporate meeting or other normal corporate records, freely co-mingling the funds of Zankou Enterprises, Inc. and the RIF Defendants' funds, funneling any funds received by Zankou enterprises, Inc. to the RIF Defendants' personal accounts on an

SECOND AMENDED COMPLAINT

opportunistic basis. The RIF Defendants thus have ignored and abused the corporate form with such abandon that persons actually conducting business with Zankou Enterprises, Inc. did not even know that Zankou Enterprises, Inc. is separate from the RIF Defendants and vice versa. In short and on information and belief, Zankou Enterprises, Inc. is a sham corporation, designed and operated to perpetrate fraud.

14.    Each of the Defendants is the agent, servant, or employee of each of the other Defendants, and at all times herein mentioned was acting within the course and scope of such agency, authority and employment. Each of the Defendants named herein was responsible in whole or in part, for the losses and damages suffered by Plaintiffs.

15.    Plaintiffs are informed and believe and based thereon allege that all of the non-corporate Defendants are citizens and residents of the County of Los Angeles, State of California and are doing business primarily in Los Angeles County or Orange County within the State of California.

## JURISDICTION AND VENUE

16.    This action arises under the Trademark Laws of the United States, including particularly 15 U.S.C. §§ 1064 and 1119, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. §§ 1119 and 1125. This Court also has supplemental jurisdiction over the state law claims, including unfair competition under California Bus. & Prof. Code §§17200, et seq., breach of fiduciary duty, and imposition of a constructive trust pursuant to 28 U.S.C. § 1367.

17.    Venue is proper in this District under U.S.C. § 1391(b)(2) and 1391(d) as the wrongful acts and conduct of all the Defendants named herein occurred primarily within this District.

SECOND AMENDED COMPLAINT

18.    An actual, present, and justiciable controversy has arisen between the parties pursuant to 28 U.S.C. § 2201.  Defendants have recently claimed that they are the owners of multiple service and trademarks used in conjunction with their restaurant business, that Plaintiffs have unlawfully used said marks, and that Plaintiffs must cease and desist from use of said marks or face litigation.  Because Defendants are demanding that Plaintiffs cease use of certain words and phrases, which Plaintiffs do not believe can or should be registered, in Plaintiffs' restaurant business, a specific and immediate dispute exists between the Parties.  Plaintiffs require clarity regarding their non-infringement so that they can serve their customers and protect and further develop their goodwill and reputation.

## THE SERVICE MARK AND TRADEMARKS AT ISSUE

19.    **ZANKOU CHICKEN** was registered as a Service Mark on October 17, 2006, on the Principal Register of the U.S Patent and Trademark Office ("USPTO") based on an application filed on December 10, 2003, by Haygan Iskenderian, Rita Iskenderian, Vartkes Marjik, and Hagop Marjik.  As discussed below, all rights to the ZANKOU CHICKEN mark were by Court order dated March 21, 2005, determined to be jointly and equally owned among Mardiros Iskenderian, Dzovig Iskenderian and Haygan Iskenderian by Court order dated March 21, 2005.

20.    The ZANKOU CHICKEN mark is currently, as a matter of law, owned jointly and equally by Plaintiff Haygan Iskenderian and Defendant Rita Iskenderian and those to whom she has assigned the mark, including, on information and belief, each of the Defendants.

21.    **TARNA** was registered as a trademark on the Principal Register of the USPTO on November 30, 1999, on an application filed by Mardiros Iskenderian on January 22, 1999.  It bears Registration Number 2296186.  The mark consists of standard characters without claim to any particular font style, size, or color.  Its use

6

SECOND AMENDED COMPLAINT

is for "chicken shawarma patties." It was granted Section 15 status on May 23, 2019. It is currently owned by Rita Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit C.  Relevant portions of the prosecution history for the mark TARNA before the PTO relevant to the claims herein are attached hereto as Exhibit D.   Contrary to Applicant Mardiros Iskenderian's statements to the USPTO, TARNA was used by the Iskenderian family as early as 1984, long before Applicant filed the trademark application on January 22, 1999.

22.    **THE MEDITERRANEAN FEAST** was registered as a trademark on the Principal Register of the USPTO on November 14, 2014, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on January 22, 1999.  It bears Registration Number 4802609.  The mark consists of standard characters without claim to any particular font style, size, or color.  The word "MEDITERRANEAN" is disclaimed. It is used for a "combination meal consisting of meats, namely chicken and kebabs  with side dishes for consumption on or off the premises."  It was granted Section 15 status on July 30, 2021,  It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit E.  Relevant portions of the prosecution history for the mark THE MEDITERRANEAN FEAST before the PTO relevant to the claims herein are attached hereto as Exhibit F.

23.    **KABOB VARIETY PACK** was registered as a trademark on the Supplemental Register of the USPTO on August 22, 2017, on an application filed by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on February 25, 2016.  It bears Registration Number 5272962. The mark consists of standard characters without claim to any particular font style,

size, or color. The word "KABOB" is disclaimed. It is used for a "combination meal consisting of meats, namely , chicken and beef kababs [sic] with side dishes for consumption on or off the premises." It is currently owned by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit G. Relevant portions of the prosecution history for the mark KABOB VARIETY PACK before the PTO relevant to the claims herein are attached hereto as Exhibit H.

24. **WRAP VARIETY PACK** was registered as a trademark on the Supplemental Register of the USPTO on August 22, 2017, on an application filed by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on February 25, 2016. It bears Registration Number 5272961. The mark consists of standard characters without claim to any particular font style, size, or color. The word "WRAP" is disclaimed. It is used for a "combination meal consisting of wrap sandwiches for consumption on or off the premises." It is currently owned by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit I. Relevant portions of the prosecution history for the mark WRAP VARIETY PACK before the PTO relevant to the claims herein are attached hereto as Exhibit J.

25. **MEDITERREAN BARBECUE SPECIAL** was registered as a trademark on the Principal Register of the USPTO on December 27, 2022, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 18, 2021. It bears Registration Number 6934495. The mark consists of standard characters without claim to any particular font style, size, or color. The words MEDITERRANEAN BARBECUE" are disclaimed. It is

SECOND AMENDED COMPLAINT

used for a "combination meal consisting of meats, including chicken and side dishes for consumption on or off the premises." It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit K. Relevant portions of the prosecution history for the mark MEDITERRANEAN BARBECUE SPECIAL before the PTO relevant to the claims herein are attached hereto as Exhibit L.

26.    **THE BIG FAMILY MEAL** was registered as a trademark on the Supplemental Register of the USPTO on July 14, 2015, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 10, 2014. It bears Registration Number 47745036. The mark consists of standard characters without claim to any particular font style, size, or color. The word "MEAL" is disclaimed. It is used for a "combination meal consisting of meats, including chicken and kebabs for consumption on or off the premises." It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit M. Relevant portions of the prosecution history for the mark THE BIG FAMILY MEAL before the PTO relevant to the claims herein are attached hereto as Exhibit N.

27.    **THE BIG FAMILY MEAL** was registered as a trademark on the Principal Register of the USPTO on December 27, 2022, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 18, 2021. It bears Registration Number 6934496. The mark consists of standard characters without claim to any particular font style, size, or color. The word "MEAL" is disclaimed. It is used for a "combination meal consisting of meats, including chicken and kebabs for consumption on or off the premises." It is currently

SECOND AMENDED COMPLAINT

owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit O.  Relevant portions of the prosecution history for the mark THE BIG FAMILY MEAL before the PTO relevant to the claims herein are attached hereto as Exhibit P.

## BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION

28.    Each of the Plaintiffs and each of the Defendants directly or indirectly own and or operate restaurants in various locations primarily in Los Angeles County under the service mark ZANKOU CHICKEN.  All Plaintiffs and all Defendants are members of the Iskenderian family, and descendants of Vartkes and Markrid Iskenderian.  ZANKOU CHICKEN has been the Iskenderian family's common law service mark for three generations.  The Iskenderian family ran its first chicken shop under that name in Beirut, Lebanon from 1962.  The family closed the Beirut location in 1984, emigrated to Los Angeles, and opened its first U.S. restaurant in the Hollywood area shortly thereafter.  The venture succeeded and its ZANKOU CHICKEN name gained substantial recognition and real value in the Los Angeles area.  Patriarch Vartkes Iskenderian died of natural causes in 1992.  All members of the Iskenderian family mourned this loss but continued to build the family business, operating under the ZANKOU CHICKEN mark.

29.    In 2002, Markrid Iskenderian established the 2002 Markrid Iskenderian Living Trust (the "Trust").  Each of Mardiros Iskenderian, Dzovik Iskenderian Marjik, and Plaintiff Haygan Iskenderian were the children of the Trustor Markrid Iskenderian and beneficiaries of the Trust.

30.    On January 14, 2003, violence shattered the family when Vartkes  and Markrid Iskenderian's son Mardiros shot his mother Markrid and his sister Dzovik

SECOND AMENDED COMPLAINT

Iskenderian Marjik, before shooting himself.    Defendant Rita Iskenderian  is the widow of Mardiros Iskenderian.

31.    Taking advantage of this family tragedy, in order to preclude Plaintiffs from the benefits of the Trust, including but not limited to the use and enjoyment of the ZANKOU CHICKEN mark, in 2003, Rita Iskenderian filed a Petition under California Probate Code against Plaintiff Haygan Iskenderian, claiming that Rita Iskenderian exclusively owned the ZANKOU CHICKEN service mark because the family patriarch, her late father, Vartkes Iskenderian, had allegedly transferred all ZANKOU CHICKEN mark rights to his son/her late husband Mardiros Iskenderian in 1991.

32.    On March 21, 2005, the Honorable John Shepard Wiley, Sr., Judge of the Los Angeles Superior Court, rejected the claims by Rita Iskenderian and made the determination that, per the express terms of the 2002 Markrid Iskenderian Living Trust, the ZANKOU CHICKEN mark was owned and was to be divided equally as follows:

"The Distribution provision appended to the 2002 [Markrid Iskenderian] trust specified that: all rights to the trademark/trade name 'Zankou Chicken' shall be divided equally among Mardiros Iskenderian [now deceased], Dzovik Marjik [now deceased] and Haygan Iskenderian share and share alike.", and "All rights to the ZANKOU CHICKEN shall be divided equally among Mardiros Iskenderian, Dzovig Iskenderian and Haygan Iskenderian share and share alike as the 2002 Markrid Living Trust validly directs."

A true and correct copy of the Court's Statement of Decision After Court Trial on Probate Code Section 850 Petition is attached hereto as Exhibit B.

33.    Thereafter, and continuing to the present, one, some or all of the Defendants have engaged in the following acts, conduct, and failures to act for the

SECOND AMENDED COMPLAINT

express purpose of thwarting and or severely limiting the right to "share and share alike" the ZANKOU CHICKEN mark, and the usage and benefits that emanate from such co-ownership, including without limitation the following:

 a. Actively registering the ZANKOU CHICKEN trademark on nearly all social media platforms, whether intended to be used or not. Defendants intentionally and effectively blocked the Plaintiffs from being able to register their restaurant operations using the ZANKOU CHICKEN trademark on all of these websites;

 b. Preventing Plaintiffs' restaurants from being included in the "Zankou Chicken" mobile phone application;

 c. Preventing Plaintiffs' restaurants from being included in the "Zankou Chicken" website;

 d. Implying at one time or another on Defendant's "zankouchicken.com" website that Plaintiffs' food and/or operations are inferior to theirs, specifically that "Only the restaurants that [the Defendants] manage offer the unique experience you have come to love and expect for over 60 years"; and

 e. Making or causing others to make false, misleading and defamatory statements about one or more of Plaintiff's restaurant operations on various social media and restaurant review platforms such as the following, by way of example:

  1. That Plaintiffs' restaurants are "fake" because they are not on the zankouchicken.com website;

  2. That Plaintiffs' restaurants are "spin-offs";

  3. That Plaintiffs' restaurant locations are "franchised stores";

  4. Plaintiffs' restaurants are not owned by the "same family" as the Defendants' restaurants;

SECOND AMENDED COMPLAINT

5. That Plaintiffs' restaurant operations are "not the real Zankou"; and

6. If you want the "real" Zankou Chicken, you should go to only the Glendale, Van Nuys, Burbank, West Hollywood, Toluca Lake, and Anaheim locations.

34. On or about July 3, 2025, Counsel for Defendants sent a letter to Plaintiffs' Counsel, stating that Plaintiffs, in conducting their own businesses, have infringed Defendants' registered trademarks, including TARNA, THE MEDITERRANEAN FEAST, WRAP VARIETY PACK, KABOB VARIETY PACK, MEDITERRANEAN BARBECUE SPECIAL, and THE BIG FAMILY MEAL, and threatening to file an action against Defendants alleging infringement of said marks. A true and correct copy of that letter is attached hereto as Exhibit Q.

## **FIRST CLAIM FOR RELIEF**

### **(Cancellation of Registration of the Mark TARNA)**

35. Plaintiffs repeat each allegation contained in paragraphs 1 through 34 as though set forth  herein at length.

36. On information and belief, Plaintiffs allege trademark applicant Mardiros Iskenderian  knowingly made false and material representations with an intent to mislead the USPTO when filing his trademark application for the mark TARNA pursuant to 15 U.S.C. § 1051(a).  In particular, on January 8, 1999, Mr. Iskenderian submitted a Declaration to the PTO as part of his application to register the mark TARNA on the Principal Register.  Exhibit D.  Mr. Iskenderian stated, in part:  "[H]e/she believes applicant to be owner of the trademark/service mark sought to be registered, or if the application is being files [sic] under 15 U.S.C, he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the above identified mark in commerce, either in the identical form therefor

SECOND AMENDED COMPLAINT

or in such near resemblance thereto as to be likely, when used or in connection with the goods/services of such other person to cause confusion, or to cause mistake, or to deceive; and that all statement made of his/her knowledge are true and that all statements made on information and belief are believed to be true."

37.     When Mardiros Iskenderian made this declaration under oath and under penalty of perjury, he was aware that Plaintiffs had also been using the mark TARNA to refer to the same food products, namely chicken "shawarma", in their restaurants since on or about 1984, long before his application for registration in 1999, and when all restaurants were the property of the Iskenderian family under the patriarchy of Vartkes Iskenderian.  Furthermore, Mardiros Iskenderian, in alleging that he was entitled to registration of TARNA on the Principal Register pursuant to 15 U.S.C. § 1051(1), specified that the mark was being used in "interstate [commerce] (for example, interstate or between the U.S. and a specified foreign country)."  Such representation was, in fact, false, as Mardiros Iskenderian was aware that at the time that the mark TANRA was being used only intrastate (i.e., within California) "on wrappers and used in advertising/displays" intended for intrastate customers only.

38.     On information and belief, Plaintiffs further allege that Mardiros Iskenderian's  statements were false representations regarding material facts; that Mardiros Iskenderian knew or believed that the representations were false; that Mardiros Iskenderian made the false statements with the intent to induce reliance of the  Trademark  Examination  Attorney  upon  the  misrepresentations  in  the examination of the trademark application, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark TARNA proximately issued as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  Had the applicant Mardiros Iskenderian revealed that the mark had been used since at least 1984 in the Iskenderian family restaurants and that the mark was

SECOND AMENDED COMPLAINT

not used and was not intended to be used in interstate commerce, the USPTO would not have registered the mark or renewed its registration.

39.    On information and belief, Plaintiffs allege that Rita Iskenderian, wife of and successor-in-interest to Mardiros Iskenderian, made false and material representations with an intent to mislead the USPTO, through counsel of record, when filing the trademark Sections 8 & 15 Combined Declaration of Use and Incontestability for the mark TARNA on January 24, 2005 when she stated: The owner is using or is using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods and/or services as identified above," and the Sections 8 & 9 Renewal Request on November 30, 2009, when she stated: "the mark is in use in commerce on or in connection with **all** goods/services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: chicken shawarma patties;" and declared " the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above." Exhibit D.  Specifically, Rita Iskenderian knew that at the time of the Sections 8 & 15 Declaration of Use and the Sections 8 & 9 Renewal Request, she had not used the mark TARNA in interstate commerce, but instead used such mark only in the RIF Defendants' restaurants in the Los Angeles area, and to sell the "chicken shawarma patties" known as tarna to customers in their restaurants in the Los Angeles area, or to customers within said area who order tarna over the internet. Notwithstanding the lack of use of the mark in interstate commerce, Rita

Iskenderian, acting through her counsel of record, declared under penalty of perjury the mark had been continuously used in commerce for five consecutive years after the date of registration and was still in use in commerce (Sections 8 & 15 Declaration of Use), and was in use in commerce on or in connection with the identified goods (Sections 8 & 9 Renewal Request). Further, she knew but failed to advise the PTO that the mark was used by the entire Iskenderian family in their restaurant businesses since on or about 1984, long before the application for registration in 1999 by Mardiros Iskenderian, and when all restaurants were the property of the Iskenderian family under the patriarchy of Vartkes Iskenderian.

40.    On information and belief, Plaintiffs further allege that Rita Iskenderian's statements were false representations regarding material facts; that Rita Iskenderian knew or believed that the representations were false; that Rita Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark Sections 8 & 15 Declaration of Use and Sections 8 & 9 Renewal Request, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark TARNA was granted Section 15 status and renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular. The USPTO relied upon said misrepresentations in granting Section 15 status and allowing the registration to renew. Had the original applicant Mardiros Iskenderian or Defendant Rita Iskenderian revealed that the mark was not used and was not intended to be used in interstate commerce, the USPTO would not have granted Section 15 status or renewed the registration of TARNA.

41.    Moreover, even if the mark TARNA were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3), as it

SECOND AMENDED COMPLAINT

generic for a type or category of product, i.e., "chicken shawarma," rather than identifying Defendants as the source of said product.  By way example, as shown in Exhibit R, multiple restaurants within the Los Angeles area have a chicken dish known as or at least referred to by customers as "chicken tarna", and "tarna" is also the subject of multiple recipes readily available online.   Thus, the primary significance of "tarna" has become the name for a particular type of good, chicken shawarma, irrespective of its source.

42.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 2296186 pursuant to 15 U.S.C. 1119.

## SECOND CLAIM FOR RELIEF

**(Cancellation of Registration of the Mark THE MEDITERRANEAN FEAST)**

43.    Plaintiffs repeat each allegation contained in paragraphs 1 through 42 as though set forth  herein at length.

44.    On information and belief, Plaintiff alleges Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for THE MEDITERRANEAN FEAST by stating as follows, through their attorneys of record, "The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant;"  made false and material representations with an intent to mislead the USPTO when filing the Sections 8 & 15 Combined Declaration as follows: "For International Class 029, the mark is in use in commerce on or in connection

SECOND AMENDED COMPLAINT

with all of the goods/all of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Combination meal consisting of meats, namely, chicken and kebabs with side dishes for consumption on or off the premises; and the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods/all services, or to indicate membership in the collective membership organization, listed in the existing registration for this class;" and made false and material representations with an intent to mislead the USPTO when filing the Sections 8 & 9 Renewal Request as follows: "the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services/collective membership organization." Exhibit F. Specifically, none of said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian had used or intended to use the mark THE MEDITERRANEAN FEAST in interstate commerce when making their respective filings, but instead had used and they intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Mediterranean Feast over the internet. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

45.    On information and belief, Plaintiffs further allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's

SECOND AMENDED COMPLAINT

statements were false representations regarding material facts; that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knew or believed that the representations were false; that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application and the Sections 8 & 15 Declaration of Use and Sections 8 and 9 Renewal Request, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark TARNA was registered on the Principal Register, then granted Section 15 status and renewed the registration, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  The USPTO relied upon said misrepresentations in registering the mark THE MEDITERRANEAN FEAST, granting Section 15 status, and allowing the registration to renew.  Had said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark, granted Section 15 status, or renewed its registration.

46.     Moreover, even if the mark THE MEDITERRANEAN FEAST were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., "a combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises," rather than identifying Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or any licensed user of the mark as the source of said product.  By way of example, as shown in Exhibit S, multiple restaurants utilize the phrase "The Mediterranean Feast" or "Mediterranean

SECOND AMENDED COMPLAINT

Feast" to refer to a combination Mediterranean meal.  Thus, the primary significance
of "Mediterranean Feast" is the name for a particular type of combination meal of
Mediterranean origin, irrespective of its source.

47.    Accordingly, Plaintiffs are entitled to an order directing cancellation of
Registration Number 4802609 pursuant to 15 U.S.C. 1119.

### THIRD CLAIM FOR RELIEF

**(Cancellation of Registration of the Mark KABOB VARIETY PACK)**

48.    Plaintiffs repeat each allegation contained in paragraphs 1 through 47
as though set forth  herein at length.

49.    On information and belief, Plaintiff alleges Defendants Rita
Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes
Iskenderian  knowingly made false and material representations with an intent to
mislead the USPTO when filing their trademark application for KABOB VARIETY
PACK, made false and material misrepresentations when filing an amendment to
allege use, and made false and material representations with an intent to mislead the
USPTO when filing the Section 8 Declaration of Use.  Specifically, Defendants Rita
Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes
Iskenderian, through their attorney of record,  falsely stated in their Trademark
Application on February 26, 2016, that "[t]he applicant has a bona fide intention,
and is entitled, to use the mark in commerce on or in connection with the identified
goods/services."  Exhibit H.  On December 21, 2016, said Defendants through their
attorney of record,  falsely stated in their Amendment to Allege Usage under 15
U.S.C. Section 1051(c) that "[t]he mark was first used by the applicant, or the
applicant's related company, licensee, or predecessor in interest at least as early as
12/01/2016, and first used in commerce at least as early as 12/01/2016, and is now
in use in such commerce," and further declared that "the applicant is using the mark

SECOND AMENDED COMPLAINT

in commerce on or in connection with all the goods/services in the application or notice of allowance, or as subsequently modified." *Id.* On September 9, 2022, said Defendants, through counsel of record, declared that in their Section 8 Statement of Use that "the mark is in use in commerce on or in connection with the goods/services." *Id.* Notwithstanding said Defendants' declarations made under penalty of perjury, none of Defendants had used or intended to use the mark KABOB VARIETY PACK in interstate commerce when making their respective filings, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, namely, chicken and beef kebabs with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order Kabob Variety Pack over the internet. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

50. On information and belief, Plaintiffs further allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's statements were false representations regarding material facts; that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knew or believed that the representations were false; that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, the Amendment to Allege Usage, and the Section 8 Declaration of Use, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark TARNA was registered on the Supplemental Register, then renewed.

SECOND AMENDED COMPLAINT

proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.    The USPTO relied upon said misrepresentations in registering the mark THE KABOB VARIEY PACK and renewing that registration. Had said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark and renewed the registrations.    Accordingly, the mark KABOB VARIETY PACK should be cancelled based on Defendant Applicants' fraud on the PTO and as being *void ab initio*.

51.    Moreover, even if the mark KABOB VARIETY PACK were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., "a combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises" rather than identifying assignees as the source of said product.  By way of example, as shown in Exhibit T, multiple restaurants utilize the phrase "Kabob Variety Pack to refer to a  "combination meal consisting of meats, namely, chicken and beef kebabs with side dishes for consumption on or off the premises."  Thus, the primary significance of "kabob variety pack" is the name for a particular type or category of combination meal comprising kabobs and side dishes, irrespective of its source.  That KABOB VARIETY PACK is generic is further demonstrated by the PTO's rejection of said Defendants' application for trademark registration of KABOB VARIETY PACK on the Principal Register notwithstanding their false declaration that "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the

SECOND AMENDED COMPLAINT

five years immediately before the date of this statement."  In rejecting the claim of distinctiveness, the Trademark Examiner stated:  "[t]he allegation of five years' use is insufficient to show acquired distinctiveness because the applied-for mark is highly descriptive of applicant's goods.  [cites omitted.]  Applicant may respond by providing additional evidence of acquired distinctiveness."  As shown in Exhibit H, said Defendants failed to respond to the PTO's requirement for further information to overcome the PTO's finding, and the request for registration of said mark on the Principal Register was rejected.

52.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 5272962 pursuant to 15 U.S.C. 1119.

## FOURTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark WRAP VARIETY PACK)

53.    Plaintiffs repeat each allegation contained in paragraphs 1 through 52 as though set forth  herein at length.

54.    On information and belief, Plaintiff alleges Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, Vartkes Iskenderian, and Rita Iskenderian  knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application and the trademark renewal application.  Specifically, in their application for registration of WRAP VARIETY PACK on February 25, 2016, said Defendants, through counsel of record, stated that "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," and declared that:  "the applicant is using the mark in commerce on or in connection with the goods/services in the application; the specimen(s) shows the mark as used on or in connection with the goods/services in the application."  Exhibit

SECOND AMENDED COMPLAINT

J.  On July 31, 2023, said Defendants submitted a Section 8 Request to the PTO in which they declared, through counsel of record, that "the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s)."  *Id.*  None of said Defendants had used or intended to use the mark WRAP VARIETY PACK in interstate commerce when making their respective filings, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area to sell a "combination meal consisting of wrap sandwiches for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order the Wrap Variety Pack over the internet.  Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

55.  On information and belief, Plaintiffs allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, Vartkes Iskenderian, and Rita Iskenderian's  statements were false representations regarding material facts; that said Defendants knew or believed that the representations were false; that said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Section 8  Declaration of Use; that the Trademark Examination Attorney reasonably relied thereon; and that the trademark WRAP VARIEY PACK was registered on the Supplemental Register, then renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.   The USPTO relied upon said misrepresentations in registering the mark wrap variety pack and renewing the registration.  Had said

SECOND AMENDED COMPLAINT

Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark and renewed the registration. Accordingly, the mark WRAP VARIETY PACK should be cancelled based on Defendant Applicants' fraud on the PTO and as being *void ab initio*.

56. Moreover, even if the mark WRAP VARIETY PACK were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, i.e., "a combination meal consisting of wrap sandwiches for consumption on or off the premises" rather than identifying assignees as the source of said product. As shown in Exhibit U, multiple restaurants utilize the phrase "Wrap Variety Pack" to refer to a combination meal consisting of wrap sandwiches for consumption on or off the premises. Thus, the primary significance of "wrap variety pack" is the name for a particular type or category of combination meal comprising wrap sandwiches, irrespective of its source.

57. Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 5272961 pursuant to 15 U.S.C. 1119.

## FIFTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark MEDITERRANEAN BARBECUE SPECIAL)

58. Plaintiffs repeat each allegation contained in paragraphs 1 through 57 as though set forth herein at length.

59. On information and belief, Plaintiff alleges Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian

SECOND AMENDED COMPLAINT

knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for the mark MEDITERRANEAN BARBECUE SPECIAL. Specifically, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement," and further declared "The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit L, notwithstanding none of said Defendants had used or intended to use the mark MEDITERRANEAN BARBECUE SPECIAL in interstate commerce when making their filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order the Mediterranean Barbecue Special over the internet. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

60.     On information and belief, Plaintiffs allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's statements were false representations regarding material facts; that said Defendants knew or believed that the representations were false; that said Defendants made the

SECOND AMENDED COMPLAINT

false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark MEDITERRANEAN BARBECUE SPECIAL was registered on the Principal Register proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  The USPTO relied upon said misrepresentations in registering the mark MEDITERRANEAN BARBECUE SPECIAL.  Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark.  Hence the mark should be cancelled for fraud on the PTO and as being *void ab initio*.

61.    Moreover, even if the mark MEDITERRANEAN BARBECUE SPECIAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., " a combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises," rather than identifying Defendants as the source of said product.

62.    Further, even if the mark MEDITERRANEAN BARBECUE SPECIAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(1) as it merely descriptive for a type or category of product, e.g., "a combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" rather than identifying assignees as the source of said product.

63.    Accordingly, Plaintiffs are entitled to an order directing cancellation of

Registration Number 6934495 pursuant to 15 U.S.C. 1119.

## SIXTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark THE BIG FAMILY MEAL – No. 4774503)

64.     Plaintiffs repeat each allegation contained in paragraphs 1 through 63 as though set forth  herein at length.

65.     On information and belief, Plaintiff alleges Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application and the Section 8 Declaration of Use for the mark THE BIG FAMILY MEAL, now registered on the Supplemental Register.  Specifically, in their trademark application for trademark filed November 10, 2014, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," and further declared "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit N, notwithstanding none of said Defendants had used or intended to use the mark THE BIG FAMILY MEAL in interstate commerce when making their respective filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Big Family Meal over the internet. In their Section 8 Declaration of Use, filed on March 30, 2021, said Defendants stated: "the mark is in use in commerce on or in connection with all goods/services, . . ., listed in the existing registration for this specific

SECOND AMENDED COMPLAINT

class[],” and declared “the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s).” *Id.* Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country”).

66.   On information and belief, Plaintiffs allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's statements were false representations regarding material facts; that said Defendants knew or believed that the representations were false; that said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark THE BIG FAMILY MEAL was registered on the Principal Register proximately as a result of said reliance, and renewed, to the detriment of the public generally and Plaintiffs in particular.   The USPTO relied upon said misrepresentations in registering the mark THE BIG FAMILY MEAL and renewing the registration.   Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark nor renewed it.   Hence the mark should be cancelled for fraud on the PTO and as being *void ab initio*.

67.   Moreover, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., “a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption

on or off the premises" rather than identifying assignees as the source of said product, shown, by way of example, in Exhibit V.

68.     Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 6934496 pursuant to 15 U.S.C. § 1119.

## SEVENTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark THE BIG FAMILY MEAL – No. 6934446)

69.     Plaintiffs repeat each allegation contained in paragraphs 1 through 68 as though set forth  herein at length.

70.     On information and belief, Plaintiff alleges Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application and the Section 8 Declaration of Use for the mark THE BIG FAMILY MEAL, now registered on the Principal Register. Specifically, in their trademark application for trademark filed November 18, 2021, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement," and further declared "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit P, notwithstanding none of said Defendants had used or intended to use the mark THE BIG FAMILY MEAL in interstate commerce when making their respective filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles

SECOND AMENDED COMPLAINT

area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Big Family Meal over the internet.   Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country").

71.    On information and belief, Plaintiffs allege that Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's statements were false representations regarding material facts; that said Defendants knew or believed that the representations were false; that said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Trademark Examination Attorney reasonably relied thereon; and that the trademark THE BIG FAMILY MEAL was registered on the Principal Register proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.   The USPTO relied upon said misrepresentations in registering the mark THE BIG FAMILY MEAL.  Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark.  Hence the mark should be cancelled for fraud on the PTO and as being *void ab initio*.

72.    Moreover, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, i.e., "a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption

SECOND AMENDED COMPLAINT

on or off the premises" rather than identifying assignees as the source of said product, as shown, by way of example, in Exhibit V.

73.     Further, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(1) as it merely descriptive for a type or category of product, i.e., "a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption on or off the premises," rather than identifying assignees as the source of said product as shown, by way of example, in Exhibit V.

74.     Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 6934496 pursuant to 15 U.S.C. § 1119.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment of Co-Ownership of the Mark TARNA)

75.     Plaintiffs repeat each allegation contained in paragraphs 1 through 74 as though set forth herein at length.

76.     From approximately 1984 when the Iskenderian family opened its Zankou Chicken restaurant in the Los Angeles area until the present, family members, including Plaintiffs and Defendants, have used "tarna" as the name of a popular dish, also commonly referred to as "chicken shawarma," comprising marinated chicken that turns on a spit similar to another popular Mediterranean dish, steak shawarma. By operation of law, the Iskenderian family developed common law trademark rights to the mark TARNA. Such rights, either explicitly or implicitly, belonged to the same 2002 Markrid Iskenderian Living Trust that was subject to the Superior Court's Statement of Decision After Court Trial on Probate Code Section 850 Petition in 2006. Notwithstanding such rights belonging to the Iskenderian family, including Plaintiffs and Defendants, Defendants Mardiros

Iskenderian  and his successor-in-interest Rita Iskenderian applied for and received a federal registration for TARNA in the name of Rita Iskenderian only.  To the extent the registration of TARNA was legitimate, it was done on behalf of the entire family, i.e. as constructive trustee for the benefit of the entire family, not just Mardiros ISKENDERIAN or his family.

77.    Alternatively, rather than seeking cancellation of  the registration of TARNA on the Principal Register of the USPTO, Plaintiffs request the Court to declare that the mark TARNA is jointly and severally owned by Plaintiffs and Rita Iskenderian as direct or indirect beneficiaries of the 2002 Markrid Iskenderian Living Trust, and order that Registration Number 2296196 be amended to reflect said ownership.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment of No Trademark Infringement)

78.    Plaintiffs repeat each allegation contained in paragraphs 1 through 77 as though set forth  herein at length.

79.    Defendants through theirs attorneys by letter dated July 3, 2025, attached hereto as Exhibit Q, alleged that Plaintiffs have unlawfully used RIF Defendants' registered trademarks, including TARNA, THE MEDITERRANEAN FEAST, WRAP VARIETY PACK, KABOB VARIETY PACK, MEDITERRANEAN BARBECUE SPECIAL, and THE BIG FAMILY MEAL, and have threatened legal action if Plaintiffs do not comply with Defendants' demands to cease and desist use of such trademarks.  Plaintiffs' have not and do not infringe any lawfully obtained mark owned by Defendants.  As a result of said July 3, 2025, letter, Plaintiffs have a reasonable apprehension that they will be sued by Defendants for trademark infringement.  Thus this dispute is sufficient for the Court to invoke jurisdiction pursuant to 28 U.S.C. § 2201(a) which provides, "In a case of actual

SECOND AMENDED COMPLAINT

controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

80.    Plaintiffs seek and are entitled to a declaratory judgment that they do not infringe any of the enumerated trademarks.

81.    This is an exceptional case for which Plaintiffs seek an award of their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## TENTH CLAIM FOR RELIEF

### (Unfair Competition Pursuant to the Lanham Act)

### (Against All Defendants)

82.    Plaintiffs repeat each allegation contained in paragraphs 1 through 81 as though set forth herein at length.

83.    Defendants' denial of and interference with Plaintiffs' access to social media platforms to promote the Zankou Chicken brand and failure to include Plaintiffs' store locations on the mobile application and corporate website were intended to characterize Plaintiff's restaurant operator as not authentic Zankou Chicken restaurants but rather restaurant operations which are separate and inferior, or franchised locations, not legitimately operating under the ZANKOU CHICKEN service mark. Such conduct constitutes an unfair business act and unfair and deceptive advertising within the meaning of 15 U.S.C. § 1125 (Section 43(a) of the Lanham Act).

84.    Defendants' actions have resulted in damages to Plaintiffs in the form of lost or unrealized patronage of prospective customers and others in an amount to be proven at trial.

SECOND AMENDED COMPLAINT

85.    By stating on their zankouchicken.com website that only the restaurants that the Defendants' managed restaurants  "offer the unique experience you have come to love and expect for over 60 years," Defendants implied that Plaintiffs' restaurants do not do so, which constitutes an unfair business act within the meaning of 15 U.S.C.  § 1125.   On information and belief, Defendants' actions were knowing, intentional and deliberate, designed and intended to cause harm to Plaintiffs' business in knowing violation of Plaintiffs' rights.   Accordingly, Plaintiffs are entitled to an award of enhanced damages in an amount sufficient to punish and by way of example.

## ELEVENTH  CLAIM FOR RELIEF

### (Unfair Competition, Business & Professions Code Section 17200)

### (Against All Defendants)

86.    Plaintiffs repeat each allegation contained in paragraphs 1 through 85 as though set forth  herein at length.

87.    As more specifically described in paragraph 33, above, Defendants' denial of and interference with Plaintiffs' access to social media platforms to promote the Zankou Chicken brand and negative and misleading statements about Plaintiffs' restaurant operations made on social media were intended to characterize Plaintiff's restaurant operator as not authentic Zankou Chicken restaurants but rather restaurant operations which are separate and inferior, and/or merely franchised locations, not legitimately operating under the ZANKOU CHICKEN service mark.   Such conduct constitutes an unfair business act and unfair and deceptive advertising within the meaning of Business & Professions Code Section 17200.

88.    Defendants' actions have resulted in damages to Plaintiffs in the form of lost or unrealized patronage of prospective customers and others in an amount to

SECOND AMENDED COMPLAINT

be proven at trial, but not less than the minimum jurisdiction requirements of this Court. Plaintiffs cannot ascertain the amount of damages from loss of unrealized income from prospective customers caused by Defendants wrongful acts and conduct without an accounting of Defendants' income and profits from their restaurant operations.

89.    By stating on their zankouchicken.website that only the restaurants that the Defendants managed "offer the unique experience you have come to love and expect for over 60 years," Defendants implied that Plaintiffs' restaurants do not do so, which constitutes an unfair business act within the meaning of Business & Professions Code Section 17200.

90.    On information and belief, Defendants' actions were knowing, intentional and deliberate, designed and intended to cause harm to Plaintiffs' business in knowing violation of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to an award of damages, in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

### (Breach of Implied Duty of Good Faith and Fair Dealing )

### (Against All Defendants)

91.    Plaintiffs repeat each allegation contained in paragraphs 1 through 91 as though set forth  herein at length.

93.    As a result of being both co-beneficiaries under the Trust and as a result of the Court-confirmed rights of Haygan Iskenderian (and through her and the late Dzovig Marjik and to the other Plaintiffs) and the Defendants (through the late Mardiros Iskenderian), all Plaintiffs and Defendants at a minimum, owed one-another a duty of good faith and fair dealing (if not a fiduciary duty) to avoid engaging in any conduct or failure to act which would interfere with the right to the full use and benefit of the ZANKOU CHICKEN mark.

SECOND AMENDED COMPLAINT

94.     Defendants' actions as alleged above prevented Plaintiffs from being able to "share and share alike in the use of the Zankou Chicken trademark," and constitute a breach of Defendants'  duty of good faith and fair dealing owed to Plaintiffs as a co-mark holder.  This has caused damages to Plaintiffs in an amount to be proven at trial.

95.     Defendants' breaches of the duty of good faith and fair dealing  arising from their joint ownership of the ZANKOU CHICKEN  mark was knowing, intentional and deliberate, designed to block or otherwise prevent Plaintiffs from having and enjoying the equal benefit of co-owning said trademark, in knowing violation of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and by way of example.

## THIRTEENTH CLAIM FOR RELIEF

### ( Imposition of a Constructive Trust )

### (Against All Defendants)

96.     Plaintiffs repeat each allegation contained in paragraphs 1 through 95 as though set forth  herein at length.

97.     Defendants have received an amount of undue income and net profits from their restaurant operations resulting from  their  wrongful conduct as alleged herein, and have thereby been unjustly enriched,  in an amount which cannot be ascertained without an accounting.  Defendants will continue to be unjustly enriched by retention of a portion of their income and net profits from utilizing the ZANKOU CHICKEN mark derived from their wrongful conduct,  unless the court orders an accounting

98.     Accordingly, Plaintiffs are entitled to the imposition of a constructive trust on the portion of Defendants' income and profits from their restaurant operations derived by their unlawful conduct in the amount established by the

SECOND AMENDED COMPLAINT

accounting requested herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1.     For a judgment awarding compensatory damages to Plaintiffs in an amount to be proven at trial;

2.     For a judgment awarding punitive damages to Plaintiffs in an amount sufficient to punish Defendants and to deter further such conduct by way of example;

3.     For a permanent  injunction prohibiting Defendants from denigrating Plaintiffs' Zankou Chicken restaurants or attempting to differentiate the Rita Iskenderian Family Defendants' Zankou Chicken restaurants from Plaintiffs' Zankou Chicken restaurants in any media or internet application whatsoever, including but not limited to Zankou.chicken.com;

4.     For a permanent  injunction requiring Defendants to allow the locations of Plaintiffs' Zankou Chicken restaurants in any and all marketing or advertising, including but not limited to Zankouchicken.com and in any and all apps which include the listing of Zankou Chicken locations;

5.     Cancellation of U.S. Trademark Registration No. 2296186;

6.     Alternatively, that U.S. Trademark Registration No. 2296186 for the mark TARNA be amended to indicate joint ownership by Plaintiffs and Rita Iskederian;

7.     Cancellation of U.S. Trademark Registration No. 4802609;

8.     Cancellation of U.S. Trademark Registration No. 5272961;

9.     Cancellation of U.S. Trademark Registration No. 5272962;

10.    Cancellation of U.S. Trademark Registration No. 6934496;

11.    Cancellation of U.S. Trademark Registration No. 6934495;

SECOND AMENDED COMPLAINT

12. A declaration that Plaintiffs have not infringed Defendants' trademarks;

13. For an accounting by Defendants of their income and their net profits from their restaurant operations;

14. For the imposition of a constructive trust;

15. A declaration that Defendant Zankou Enterprises, Inc. is the alter ego of the remaining Defendants, and that each of the remaining Defendants is jointly and severally liable for damages attributable to Defendant Zankou Enterprises Inc.

16. A finding that this case is exceptional within the meaning of 15 U.S.C. § 1117 and a trebling of damages and corresponding award of attorneys' fees in Plaintiffs' favor;

17. An award of costs in this action;

18. Pre-and post-judgment interest for Plaintiffs' costs and fees and other damages as available under law; and

19. For such other, further, or different relief as the Court deems just, proper and equitable

## **DEMAND FOR JURY TRIAL**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

Dated:  November 21, 2025                    Respectfully submitted,

By:  /s/ Steven E. Young

Steven E. Young
Andrew W. Heger
Duane H. Mathiowetz
PRACTUS, LLP

Attorneys for Plaintiffs

39