Steven E. Young (SBN 63278)
email:  steven.young@practus.com
Andrew W. Heger (SBN 194870)
email: Andrew.heger@practus.com
PRACTUS, LLP
16501 Ventura Boulevard, Suite 304
Encino, CA 91436
Telephone:  (818) 641-5001

Duane H. Mathiowetz (CA #111831)
email: duane.mathiowetz@practus.com
PRACTUS, LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Phone: 415-501-0350

Attorneys for Plaintiffs, Haggan Iskenderian,
Hovsep Kedikian, Cecille Kedikian, and
Hagop Marjik

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYGAN ISKENDERIAN, HOVSEP KEDIKIAN, CECILLE KEDIKIAN, and HAGOP MARKIK<br><br>Plaintiffs<br><br>v.<br><br>ZANKOU ENTERPRISES, INC., RITA ISKENDERIAN, VARTKES ISKENDERIAN, STEVE ISKENDERIAN, ARA ISKENDERIAN, and DIKRAN ISKENDERIAN,<br><br>Defendants. | Case No.: 25-cv-07738-WLH-AJRx<br><br>**THIRD AMENDED COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS; DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP; DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT; TRADE DEFAMATION; UNFAIR COMPETITION UNDER THE LANHAM ACT; UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODE § 17200;  BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING; AND IMPOSITION OF CONSTRUCTIVE TRUST**<br><br>**JURY TRIAL DEMANDED** |

1

THIRD AMENDED COMPLAINT

Plaintiffs Haygan Iskenderian, Hovsep Kedikian, Cecille Kedikian, and Hagop Marjik (collectively, "Plaintiffs") for their Complaint against Defendants Zankou Enterprises, Inc. and Rita Iskenderian, Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian (the "Rita Iskenderian Family [or, "RIF"] Defendants") (collectively, Defendant Zankou Enterprises, Inc. and the RIF Defendants are referred to as "Defendants")  allege, on knowledge as to themselves and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs seek cancellation of seven federally registered marks which Defendants allege are being infringed by Plaintiffs' use in their restaurant business for which Defendants have threatened legal action.   At least one of said marks, TARNA, was used by both Plaintiffs and Defendants long before Defendants' predecessor applied for the mark.  Defendants have also breached their fiduciary duty and violated the unfair competition provisions of the Lanham Act and California Business & Professions Code by precluding Plaintiffs' fair and unhampered use of a federally registered service mark, ZANKOU CHICKEN, that was deemed to be jointly and equally owned by predecessors of both Plaintiffs and RIF Defendants, or some of them) pursuant to a Court order dated March 21, 2005. Plaintiffs therefore seek an accounting and damages, and that a constructive trust be imposed for profits generated by Defendants' use of the jointly-owned mark to the exclusion of Plaintiffs.  Finally, Plaintiffs seek declaratory judgment that they have not infringed any lawfully registered trademarks belonging to Defendants.

## PARTIES

2.      Plaintiffs Haygan Iskenderian, Hovsep Kedikian, Cecille Kedikian, and Hagop Marjik are residents of the County of Los Angeles, State of California.

2

THIRD AMENDED COMPLAINT

3. Each Plaintiff holds an undivided equal interest in the ZANKOU CHICKEN service mark as surviving relatives and are beneficiaries directly or indirectly of the 2002 Markrid Iskenderian Living Trust, as more specifically described in the schematic attached hereto as Exhibit A, the Court Decision dated March 21, 2005, attached hereto as Exhibit B, and discussed in paragraphs 28 - 32 below.

4. Each of Defendants Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian are the sons of Rita and the late Mardiros Iskenderian.

5. The Defendants own and operate ZANKOU CHICKEN restaurants in Glendale, Van Nuys, Anaheim, Pasadena, Burbank, Santa Monica/West Los Angeles, West Hollywood, Valencia, Downtown Los Angeles, Huntington Beach, and Long Beach, California.

6. Plaintiffs own and operate ZANKOU CHICKEN restaurants in Hollywood, Tarzana, Granada Hills and Thousand Oaks, California.

7. Each of the two groups of restaurants operated by Plaintiffs and the Defendants serve the same or similar dishes, all based on the same type of chicken cooked the same way, served with a secret proprietary garlic paste, often with fresh vegetables, humus, and pita bread.

8. On information and belief, Defendant Zankou Enterprises, Inc. is a California Corporation with a principal place of business at 2360 E 48th Street, Vernon, California 90058, and does business primarily, if not exclusively, in Los Angeles and Orange Counties as Zankou Chicken Restaurants. RIF Defendants Rita Iskenderian, Vartkes Iskenderian, Steve Iskenderian, Ara Iskenderian, and Dikran Iskenderian are relatives and are direct or indirect beneficiaries of said 2002 Markrid Iskenderian Living Trust, as set forth in the attached schematic as Exhibit A, the

3

THIRD AMENDED COMPLAINT

Court Decision dated March 21, 2005, attached as Exhibit B, and discussed in paragraph 32, below.  On information and belief, Rita Iskenderian is Chief Executive Officer and Secretary of Zankou Enterprises, Inc., and Vartkes Iskenderian is Chief Financial Officer of Zankou Enterprises, Inc.

9.    On information and belief, the RIF Defendants are the driving force behind Zankou Enterprises' business, with a direct financial interest in Zankou Enterprises' business as well as ultimate responsibility for the operation of Zankou Enterprise, Inc. and for any and all unlawful acts carried out in the name of Zankou Enterprise, Inc.

10.    On information and belief, Zankou Enterprises, Inc. is exclusively controlled by the RIF Defendants.  Thus, the RIF Defendants personally and directly assert complete dominion and control over Zankou Enterprises, Inc. such that every action of Zankou Enterprises Inc. is carried out at the instruction and sole discretion of the RIF Defendants.

11.    On information and belief, Defendant Zankou Enterprises, Inc. does not observe corporate formalities and are otherwise operated to further the RIF Defendants' personal endeavors and interests.

12.    On information and belief, the RIF Defendants purposefully under-capitalize Zankou Enterprises, Inc. for the purpose of defrauding potential judgment creditors.

13.    On information and belief, the RIF Defendants also operate Zankou Enterprises, Inc. as their alter-egos, not only by grossly undercapitalizing the company, but also by ignoring corporate formalities, keeping no minutes of any corporate meeting or other normal corporate records, freely co-mingling the funds of Zankou Enterprises, Inc. and the RIF Defendants' funds, funneling any funds received by Zankou enterprises, Inc. to the RIF Defendants' personal accounts on an

THIRD AMENDED COMPLAINT

opportunistic basis. The RIF Defendants thus have ignored and abused the corporate form with such abandon that persons actually conducting business with Zankou Enterprises, Inc. did not even know that Zankou Enterprises, Inc. is separate from the RIF Defendants and vice versa. In short and on information and belief, Zankou Enterprises, Inc. is a sham corporation, designed and operated to perpetrate fraud.

14.    Each of the Defendants is the agent, servant, or employee of each of the other Defendants, and at all times herein mentioned was acting within the course and scope of such agency, authority and employment. Each of the Defendants named herein was responsible in whole or in part, for the losses and damages suffered by Plaintiffs.

15.    Plaintiffs are informed and believe and based thereon allege that all of the non-corporate Defendants are citizens and residents of the County of Los Angeles, State of California and are doing business primarily in Los Angeles County or Orange County within the State of California.

## JURISDICTION AND VENUE

16.    This action arises under the Trademark Laws of the United States, including particularly 15 U.S.C. §§ 1064 and 1119, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. §§ 1119 and 1125. This Court also has supplemental jurisdiction over the state law claims, including unfair competition under California Bus. & Prof. Code §§17200, et seq., breach of fiduciary duty, and imposition of a constructive trust pursuant to 28 U.S.C. § 1367.

17.    Venue is proper in this District under U.S.C. § 1391(b)(2) and 1391(d) as the wrongful acts and conduct of all the Defendants named herein occurred primarily within this District.

THIRD AMENDED COMPLAINT

18.     An actual, present, and justiciable controversy has arisen between the parties pursuant to 28 U.S.C. § 2201.  Defendants have recently claimed that they are the owners of multiple service and trademarks used in conjunction with their restaurant business, that Plaintiffs have unlawfully used said marks, and that Plaintiffs must cease and desist from use of said marks or face litigation.  Because Defendants are demanding that Plaintiffs cease use of certain words and phrases, which Plaintiffs do not believe can or should be registered, in Plaintiffs' restaurant business, a specific and immediate dispute exists between the Parties.  Plaintiffs require clarity regarding their non-infringement so that they can serve their customers and protect and further develop their goodwill and reputation.

## THE SERVICE MARK AND TRADEMARKS AT ISSUE

19.     **ZANKOU CHICKEN** was registered as a Service Mark on October 17, 2006, on the Principal Register of the U.S Patent and Trademark Office ("USPTO") based on an application filed on December 10, 2003, by Haygan Iskenderian, Rita Iskenderian, Vartkes Marjik, and Hagop Marjik.  As discussed below, all rights to the ZANKOU CHICKEN mark were by Court order dated March 21, 2005, determined to be jointly and equally owned among Mardiros Iskenderian, Dzovig Iskenderian and Haygan Iskenderian by Court order dated March 21, 2005.

20.     The ZANKOU CHICKEN mark is currently, as a matter of law, owned jointly and equally by Plaintiff Haygan Iskenderian and Defendant Rita Iskenderian and those to whom she has assigned or licensed the mark, including, on information and belief, each of the Defendants.

21.     **TARNA** was registered as a trademark on the Principal Register of the USPTO on November 30, 1999, on an application filed by Mardiros Iskenderian on January 19, 1999.  It bears Registration Number 2296186.  The mark consists of standard characters without claim to any particular font style, size, or color.  Its use

6

THIRD AMENDED COMPLAINT

is for "chicken shawarma patties." It was granted Section 15 status on May 23, 2019. It is currently owned by Rita Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit C.  Relevant portions of the prosecution history for the mark TARNA before the PTO relevant to the claims herein are attached hereto as Exhibit D.   Contrary to Applicant Mardiros Iskenderian's statements to the USPTO, TARNA was used by the Iskenderian family as early as 1984, long before Applicant filed the trademark application on January 22, 1999.

22.    **THE MEDITERRANEAN FEAST** was registered as a trademark on the Principal Register of the USPTO on November 14, 2014, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on January 22, 1999.  It bears Registration Number 4802609.  The mark consists of standard characters without claim to any particular font style, size, or color.  The word "MEDITERRANEAN" is disclaimed. It is used for a "combination meal consisting of meats, namely chicken and kebabs  with side dishes for consumption on or off the premises."  It was granted Section 15 status on July 30, 2021,  It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit E.  Relevant portions of the prosecution history for the mark THE MEDITERRANEAN FEAST before the PTO relevant to the claims herein are attached hereto as Exhibit F.

23.    **KABOB VARIETY PACK** was registered as a trademark on the Supplemental Register of the USPTO on August 22, 2017, on an application filed by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on February 25, 2016.  It bears Registration Number 5272962. The mark consists of standard characters without claim to any particular font style,

THIRD AMENDED COMPLAINT

size, or color.  The word "KABOB" is disclaimed. It is used for a "combination meal consisting of meats, namely , chicken and beef kababs [sic] with side dishes for consumption on or off the premises."  It is currently owned by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit G.  Relevant portions of the prosecution history for the mark KABOB VARIETY PACK before the PTO relevant to the claims herein are attached hereto as Exhibit H.

24.  **WRAP VARIETY PACK** was registered as a trademark on the Supplemental Register of the USPTO on August 22, 2017, on an application filed by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on February 25, 2016.  It bears Registration Number 5272961. The mark consists of standard characters without claim to any particular font style, size, or color.  The word "WRAP" is disclaimed. It is used for a "combination meal consisting of wrap sandwiches for consumption on or off the premises."  It is currently owned by Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian.  A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit I.  Relevant portions of the prosecution history for the mark WRAP VARIETY PACK before the PTO relevant to the claims herein are attached hereto as Exhibit J.

25.  **MEDITERREAN BARBECUE SPECIAL** was registered as a trademark on the Principal  Register of the USPTO on December 27, 2022, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 18, 2021.  It bears Registration Number 6934495. The mark consists of standard characters without claim to any particular font style, size, or color.  The words MEDITERRANEAN BARBECUE" are disclaimed. It is

THIRD AMENDED COMPLAINT

used for a "combination meal consisting of meats, including chicken and side dishes for consumption on or off the premises." It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit K. Relevant portions of the prosecution history for the mark MEDITERRANEAN BARBECUE SPECIAL before the PTO relevant to the claims herein are attached hereto as Exhibit L.

26.    **THE BIG FAMILY MEAL** was registered as a trademark on the Supplemental  Register of the USPTO on July 14, 2015, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 10, 2014. It bears Registration Number 47745036. The mark consists of standard characters without claim to any particular font style, size, or color. The word "MEAL" is disclaimed. It is used for a "combination meal consisting of meats, including chicken and kebabs for consumption on or off the premises." It is currently owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit M. Relevant portions of the prosecution history for the mark THE BIG FAMILY MEAL before the PTO relevant to the claims herein are attached hereto as Exhibit N.

27.    **THE BIG FAMILY MEAL** was registered as a trademark on the Principal  Register of the USPTO on December 27, 2022, on an application filed by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian on November 18, 2021. It bears Registration Number 6934496. The mark consists of standard characters without claim to any particular font style, size, or color. The word "MEAL" is disclaimed. It is used for a "combination meal consisting of meats, including chicken and kebabs for consumption on or off the premises." It is currently

9

THIRD AMENDED COMPLAINT

owned by Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian. A true and correct copy of the current TSDR Report from the PTO is attached hereto as Exhibit O. Relevant portions of the prosecution history for the mark THE BIG FAMILY MEAL before the PTO relevant to the claims herein are attached hereto as Exhibit P.

## BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION

28. Each of the Plaintiffs and each of the Defendants directly or indirectly own and or operate restaurants in various locations primarily in Los Angeles County under the service mark ZANKOU CHICKEN. All Plaintiffs and all Defendants are members of the Iskenderian family, and descendants of Vartkes and Markrid Iskenderian. ZANKOU CHICKEN has been the Iskenderian family's common law service mark for three generations. The Iskenderian family ran its first chicken shop under that name in Beirut, Lebanon from 1962. The family closed the Beirut location in 1984, emigrated to Los Angeles, and opened its first U.S. restaurant in the Hollywood area shortly thereafter. The venture succeeded and its ZANKOU CHICKEN name gained substantial recognition and real value in the Los Angeles area. Patriarch Vartkes Iskenderian died of natural causes in 1992. All members of the Iskenderian family mourned this loss but continued to build the family business, operating under the ZANKOU CHICKEN mark.

29. In 2002, Markrid Iskenderian established the 2002 Markrid Iskenderian Living Trust (the "Trust"). Each of Mardiros Iskenderian, Dzovik Iskenderian Marjik, and Plaintiff Haygan Iskenderian were the children of the Trustor Markrid Iskenderian and beneficiaries of the Trust.

30. On January 14, 2003, violence shattered the family when Vartkes and Markrid Iskenderian's son Mardiros shot his mother Markrid and his sister Dzovik

THIRD AMENDED COMPLAINT

Iskenderian Marjik, before shooting himself.   Defendant Rita Iskenderian  is the widow of Mardiros Iskenderian.

31.    Taking advantage of this family tragedy, in order to preclude Plaintiffs from the benefits of the Trust, including but not limited to the use and enjoyment of the ZANKOU CHICKEN mark, in 2003, Rita Iskenderian filed a Petition under California Probate Code against Plaintiff Haygan Iskenderian, claiming that Rita Iskenderian exclusively owned the ZANKOU CHICKEN service mark because the family patriarch, her late father, Vartkes Iskenderian, had allegedly transferred all ZANKOU CHICKEN mark rights to his son/her late husband Mardiros Iskenderian in 1991.

32.    On March 21, 2005, the Honorable John Shepard Wiley, Sr., Judge of the Los Angeles Superior Court, rejected the claims by Rita Iskenderian and made the determination that, per the express terms of the 2002 Markrid Iskenderian Living Trust, the ZANKOU CHICKEN mark was owned and was to be divided equally as follows:

"The Distribution provision appended to the 2002 [Markrid Iskenderian] trust specified that: all rights to the trademark/trade name 'Zankou Chicken' shall be divided equally among Mardiros Iskenderian [now deceased], Dzovik Marjik [now deceased] and Haygan Iskenderian share and share alike.", and

"All rights to the ZANKOU CHICKEN shall be divided equally among Mardiros Iskenderian, Dzovig Iskenderian and Haygan Iskenderian share and share alike as the 2002 Markrid Living Trust validly directs."

A true and correct copy of the Court's Statement of Decision After Court Trial on Probate Code Section 850 Petition is attached hereto as Exhibit B.

33.    Notwithstanding the above-quoted ruling thereafter, and continuing to the present, one, some or all of the Defendants have engaged in acts and conduct,

11

THIRD AMENDED COMPLAINT

for the express purpose of inflicting damage on Plaintiffs by thwarting and or severely limiting the right to "share and share alike" the ZANKOU CHICKEN mark, and the usage and benefits that emanate from such co-ownership, including, by way of example.

a.    Defendants have made and published statements on their Zanckouchicken.com website that Plaintiffs' food and/or operations "are inferior in quality and product."

b.    Plaintiffs are informed and believe and based thereon allege that Defendants either made or caused others to knowingly make and post negative statements about Plaintiffs' restaurant operations, including their food, menu and cleanliness, that were false, misleading and defamatory on various social media and restaurant review platforms for the purpose of harming plaintiffs, such as the following by way of example.

1.    That Plaintiffs' restaurants are "fake";

2.    That Plaintiffs' restaurants are "spin-offs";

3.    That Plaintiffs' restaurant locations are merely "franchised stores";

4.    That Plaintiffs' restaurant operations are "not the real Zankou"; and

5.    That the only way to have the "real" Zankou Chicken, you should go to only to the locations owned by Defendants.

34.    On or about July 3, 2025, Counsel for Defendants sent a letter to Plaintiffs' Counsel, stating that Plaintiffs, in conducting their own businesses, have infringed Defendants' registered trademarks, including TARNA, THE MEDITERRANEAN FEAST, WRAP VARIETY PACK, KABOB VARIETY PACK, MEDITERRANEAN BARBECUE SPECIAL, and THE BIG FAMILY MEAL, and threatening to file an action against Defendants alleging infringement of said marks. A true and correct copy of that letter is attached hereto as Exhibit Q.

THIRD AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark TARNA)

35.     Plaintiffs repeat each allegation contained in paragraphs 1 through 34 as though set forth herein at length.

36.     Trademark applicant Mardiros Iskenderian knowingly made false and material representations with intent to mislead the USPTO when filing his trademark application for the mark TARNA pursuant to 15 U.S.C. § 1051(a). In particular, on January 8, 1999, Mr. Iskenderian signed a declaration later submitted to the PTO as part of his application to register the mark TARNA on the Principal Register. Exhibit D. Mr. Iskenderian stated, in part: "[H]e/she believes applicant to be owner of the trademark/service mark sought to be registered, or if the application is being files [sic] under 15 U.S.C, he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the above identified mark in commerce, either in the identical form therefor or in such near resemblance thereto as to be likely, when used or in connection with the goods/services of such other person to cause confusion, or to cause mistake, or to deceive; and that all statement made of his/her knowledge are true and that all statements made on information and belief are believed to be true." Mardiros Iskenderian also stated that the mark was first used "in commerce which the U.S. Congress may regulate (for example, interstate or between the U.S. and a foreign country)" on January 1, 1992.

37.     When Mardiros Iskenderian made this declaration under oath and under penalty of perjury, he was aware that Plaintiffs had also been using the mark TARNA to refer to the same food products, namely chicken "shawarma", in their restaurants since on or about 1984, long before his application for registration in 1999, and when all restaurants were the property of the Iskenderian family under the patriarchy of

THIRD AMENDED COMPLAINT

Vartkes Iskenderian.

38.    Prior to filing his application for registration in January 1999, Mardiros Iskenderian had used the mark TARNA only in intrastate commerce, i.e., within California.

39.    Mardiros Iskenderian, in alleging that he was entitled to registration of TARNA on the Principal Register pursuant to 15 U.S.C. § 1051(1), specified that the mark was being used in "interstate [commerce] (for example, interstate or between the U.S. and a specified foreign country)."  Such representation was, in fact, false, as Mardiros Iskenderian was aware that prior to and at that time the mark TANRA was being used only intrastate (i.e., within California) "on wrappers and used in advertising/displays" intended for intrastate customers only.

40.    Mardiros Iskenderian's  statements were false representations regarding material facts. Mardiros Iskenderian knew or believed that the representations were false. Mardiros Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application. The Trademark Examination Attorney reasonably relied thereon. The trademark TARNA proximately issued as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  Had the applicant Mardiros Iskenderian revealed that the mark had been used since at least 1984 in the Iskenderian family restaurants and that the mark was not used and was not intended to be used in interstate commerce, the USPTO would not have registered the mark or renewed its registration.

41.    Rita Iskenderian, wife of and successor-in-interest to Mardiros Iskenderian, made false and material representations with intent to mislead the USPTO, through counsel of record,  when filing the trademark Sections 8 & 15 Combined Declaration of Use and Incontestability for the mark TARNA on January

14

THIRD AMENDED COMPLAINT

24, 2005 when she stated: The owner is using or is using through a related company or licensee the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods and/or services as identified above." Exhibit D.

42.    Between the filing of the application in January 1999 by Mardiros Iskenderian and the filing of the trademark Sections 8 & 15 Combined Declaration of Use and Incontestability for the mark TARNA on January 24, 2005, by Rita Iskenderian, said mark was being used by the owner or a related company or licensee only intrastate (i.e., within California).

43.    Rita Iskenderian, wife of and successor-in-interest to Mardiros Iskenderian, made false and material representations with intent to mislead the USPTO, through counsel of record,  when filing the Sections 8 & 9 Renewal Request on November 30, 2009, and January 29, 2019, when she stated: "the mark is in use in commerce on or in connection with all goods/services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: chicken shawarma patties;" and declared " the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above." Exhibit D.

44.    Rita Iskenderian knew that at the time of the Sections 8 & 15 Declaration of Use and the Sections 8 & 9 Renewal Requests, she and any licensee or related company had not used the mark TARNA in interstate commerce, but instead used such mark only in the RIF Defendants' restaurants in the Los Angeles

15

THIRD AMENDED COMPLAINT

area, and to sell the "chicken shawarma patties" known as tarna to customers in their restaurants in the Los Angeles area, or to customers within said area who order tarna using telephone or other electronic media. Notwithstanding the lack of use of the mark in interstate commerce, Rita Iskenderian, acting through her counsel of record, declared under penalty of perjury the mark had been continuously used in commerce for five consecutive years after the date of registration and was still in use in commerce (Sections 8 & 15 Declaration of Use), and was in use in commerce on or in connection with the identified goods (Sections 8 & 9 Renewal Requests). Further, she knew but failed to advise the PTO that the mark was used by the entire Iskenderian family in their restaurant businesses since on or about 1984, long before the application for registration in 1999 by Mardiros Iskenderian, and when all restaurants were the property of the Iskenderian family under the patriarchy of Vartkes Iskenderian.

45.    Rita Iskenderian's  statements were false representations regarding material facts.    Rita Iskenderian knew or believed that the representations were false. Rita Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark Sections 8 & 15 Declaration of Use and Sections 8 & 9 Renewal Requests. The Trademark Examination Attorney reasonably relied thereon.  The trademark TARNA was granted Section 15 status and  renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  The USPTO relied upon said misrepresentations in granting Section 15 status and allowing the registration to renew.  Had the original applicant Mardiros Iskenderian or Defendant Rita Iskenderian revealed that the mark was not used and was not intended to be used in interstate commerce, the USPTO would not have granted Section 15 status or renewed the registration of TARNA.

THIRD AMENDED COMPLAINT

46.     Moreover, even if the mark TARNA were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3), as it generic for a type or category of product, i.e., "chicken shawarma," rather than identifying Defendants as the source of said product.  By way example, as shown in Exhibit R, multiple restaurants within the Los Angeles area have a chicken dish known as or at least referred to by customers as "chicken tarna," and "tarna" is also the subject of multiple recipes readily available online.   Thus, the primary significance of "tarna" has become the name for a particular type of good, chicken shawarma, irrespective of its source.

47.     Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 2296186 pursuant to 15 U.S.C. 1119.

## SECOND CLAIM FOR RELIEF

**(Cancellation of Registration of the Mark THE MEDITERRANEAN FEAST)**

48.     Plaintiffs repeat each allegation contained in paragraphs 1 through 47 as though set forth  herein at length.

49.     Prior to Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian filing their trademark application for THE MEDITERRANEAN FEAST on November 4, 2014, said mark was being used by said Defendants or their related company or their licensee only intrastate (i.e., within California).

50.     Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian  knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for THE MEDITERRANEAN FEAST by stating as follows, through their attorneys of record, "The signatory believes that: if the applicant is filing the application under

THIRD AMENDED COMPLAINT

15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant." Said Defendants also stated that the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as June 1, 2011. Exhibit F.

51.    During the period between the filing of their application for the mark THE MEDITERRANEAN FEAST and their filing of the Sections 8 & 15 Combined Declaration on March 30, 2021,  said mark was being used by said Defendants or their related company or licensee only intrastate (i.e., within California).

52.    Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian made false and material representations with an intent to mislead the USPTO when filing the Sections 8 & 15 Combined Declaration as follows: "For International Class 029, the mark is in use in commerce on or in connection with all of the goods/all of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Combination meal consisting of meats, namely, chicken and kebabs with side dishes for consumption on or off the premises; and the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with all goods/all services, or to indicate membership in the collective membership organization, listed in the existing registration for this class." Exhibit F.

53.    During the period between the filing of their Sections 8 & 15 Combined Declaration and filing their Sections 8 & 9 Renewal Request on September 3, 2025,

18

THIRD AMENDED COMPLAINT

said mark was being used by said Defendants or a related company or licensee only intrastate (i.e., within California).

54.     Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian made false and material representations with an intent to mislead the USPTO when filing the Sections 8 & 9 Renewal Request as follows: "the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services/collective membership organization." Exhibit F. Specifically, none of said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or any related company or licensee had used or intended to use the mark THE MEDITERRANEAN FEAST in interstate commerce when making their respective filings, but instead had used and they intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Mediterranean Feast using telephone or other electronic media. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

55.     Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's  statements were false representations regarding material facts. Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knew or believed that the representations were false. Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian made the false statements with the intent to induce reliance of the

THIRD AMENDED COMPLAINT

Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application and the Sections 8 & 15 Declaration of Use and Sections 8 and 9 Renewal Request. The Trademark Examination Attorney reasonably relied thereon. The trademark TARNA was registered on the Principal Register, then granted Section 15 status and the registration was renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular. The USPTO relied upon said misrepresentations in registering the mark THE MEDITERRANEAN FEAST, granting Section 15 status, and allowing the registration to renew. Had said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark, granted Section 15 status, or renewed its registration.

56.    Moreover, even if the mark THE MEDITERRANEAN FEAST were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., "a combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises," rather than identifying Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or any licensed user of the mark as the source of said product. By way of example, as shown in Exhibit S, multiple restaurants utilize the phrase "The Mediterranean Feast" or "Mediterranean Feast" to refer to a combination Mediterranean meal. Thus, the primary significance of "Mediterranean Feast" is the name for a particular type of combination meal of Mediterranean origin, irrespective of its source.

57.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 4802609 pursuant to 15 U.S.C. 1119.

THIRD AMENDED COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark KABOB VARIETY PACK)

58.     Plaintiffs repeat each allegation contained in paragraphs 1 through 57 as though set forth  herein at length.

59.     Prior to February 26, 2016, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or any related company or licensee had used the mark KABOB VARIETY PACK only intrastate (i.e., within California).

60.     Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for KABOB VARIETY PACK, Specifically, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian, through their attorney of record,  falsely stated in their Trademark Application on February 26, 2016, that "[t]he applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services."  Exhibit H.

61.     Between February 26, 2016, and  December 21, 2016, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or their related company or their licensee had used the mark KABOB VARIETY PACK only intrastate (i.e., within California).

62.     On December 21, 2016, said Defendants through their attorney of record,  falsely stated in their Amendment to Allege Usage under 15 U.S.C. Section 1051(c) that "[t]he mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 12/01/2016, and first used in commerce at least as early as 12/01/2016, and is now in use in such

THIRD AMENDED COMPLAINT

commerce," and further declared that "the applicant is using the mark in commerce on or in connection with all the goods/services in the application or notice of allowance, or as subsequently modified." Exhibit H.

63. Between December 21, 2016, and September 9, 2022, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or their related company or licensee had used the mark KABOB VARIETY PACK only intrastate (i.e., within California).

64. On September 9, 2022, said Defendants, through counsel of record, declared in their Section 8 Statement of Use that "the mark is in use in commerce on or in connection with the goods/services." Exhibit H. Notwithstanding said Defendants' declarations made under penalty of perjury, none of Defendants had used or intended to use the mark KABOB VARIETY PACK in interstate commerce when making their respective filings, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, namely, chicken and beef kebabs with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order Kabob Variety Pack using telephone or other electronic media. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

65. Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's  statements were false representations regarding material facts. Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knew or believed that the representations were false. Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes

THIRD AMENDED COMPLAINT

Iskenderian made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, the Amendment to Allege Usage, and the Section 8 Declaration of Use. The Trademark Examination Attorney reasonably relied thereon. The trademark TARNA was registered on the Supplemental Register, then renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.   The USPTO relied upon said misrepresentations in registering the mark THE KABOB VARIEY PACK and renewing that registration.   Had said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark and renewed the registrations. Accordingly, the mark KABOB VARIETY PACK should be cancelled based on Defendant Applicants' fraud on the PTO and as being *void ab initio*.

66.   Moreover, even if the mark KABOB VARIETY PACK were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., "a combination meal consisting of meats, namely, chicken and kebobs with side dishes for consumption on or off the premises" rather than identifying assignees as the source of said product. By way of example, as shown in Exhibit T, multiple restaurants utilize the phrase "kabob variety pack" to refer to a  "combination meal consisting of meats, namely, chicken and beef kebabs with side dishes for consumption on or off the premises." Thus, the primary significance of "kabob variety pack" is the name for a particular type or category of combination meal comprising kabobs and side dishes, irrespective of its source. That KABOB VARIETY PACK is generic is

23

THIRD AMENDED COMPLAINT

further demonstrated by the PTO's rejection of said Defendants' application for trademark registration of KABOB VARIETY PACK on the Principal Register notwithstanding their false declaration that "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement."  In rejecting the claim of distinctiveness, the Trademark Examiner stated:  "[t]he allegation of five years' use is insufficient to show acquired distinctiveness because the applied-for mark is highly descriptive of applicant's goods.  [cites omitted.]  Applicant may respond by providing additional evidence of acquired distinctiveness."  As shown in Exhibit H, said Defendants failed to respond to the PTO's requirement for further information to overcome the PTO's finding, and the request for registration of said mark on the Principal Register was rejected.

67.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 5272962 pursuant to 15 U.S.C. 1119.

## FOURTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark WRAP VARIETY PACK)

68.    Plaintiffs repeat each allegation contained in paragraphs 1 through 67 as though set forth  herein at length.

69.    Prior to February 25, 2016, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or their related company or licensee or predecessor in interest had used the mark WRAP VARIETY PACK only intrastate (i.e., within California).

70.    On February 25, 2016, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, Vartkes Iskenderian, and Rita Iskenderian  knowingly made false and material representations with an intent to mislead the USPTO when

24

THIRD AMENDED COMPLAINT

filing their trademark application.  Specifically, in their application for registration of WRAP VARIETY PACK on February 25, 2016, and again in their December 16, 2016 response to an Office Action, said Defendants, through counsel of record, stated that "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," and declared that:  "the applicant is using the mark in commerce on or in connection with the goods/services in the application; the specimen(s) shows the mark as used on or in connection with the goods/services in the application." Exhibit J.

71.    Between February 25, 2016, and July 31, 2023, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian had used the mark WRAP VARIETY PACK only intrastate (i.e., within California).

72.    On July 31, 2023, Defendants Rita Iskenderian, Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian submitted a Section 8 Request to the PTO in which they declared, through counsel of record, that "the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s)."  Exhibit J.  None of said Defendants had used or intended to use the mark WRAP VARIETY PACK in interstate commerce when making their respective filings, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area to sell a "combination meal consisting of wrap sandwiches for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order the Wrap Variety Pack using telephone or other electronic media.

25

THIRD AMENDED COMPLAINT

Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

73.    Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, Vartkes Iskenderian, and Rita Iskenderian's statements were false representations regarding material facts. Defendants knew or believed that the representations were false. Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Section 8 Declaration of Use. The Trademark Examination Attorney reasonably relied thereon. The trademark WRAP VARIEY PACK was registered on the Supplemental Register, then renewed, proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular. The USPTO relied upon said misrepresentations in registering the mark WRAP VARIETY PACK on the Supplemental Register and renewing the registration. Had said Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark and renewed the registration. Accordingly, the mark WRAP VARIETY PACK should be cancelled based on Defendant Applicants' fraud on the PTO and as being *void ab initio*.

74.    Moreover, even if the mark WRAP VARIETY PACK were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, i.e., "a combination meal consisting of wrap sandwiches for consumption on or off the premises" rather than identifying assignees as the source of said product. As shown in Exhibit U, multiple

26

THIRD AMENDED COMPLAINT

restaurants utilize the phrase "wrap variety pack" to refer to a combination meal consisting of wrap sandwiches for consumption on or off the premises.  Thus, the primary significance of "wrap variety pack" is the name for a particular type or category of combination meal comprising wrap sandwiches, irrespective of its source.

75.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 5272961 pursuant to 15 U.S.C. 1119.

## FIFTH CLAIM FOR RELIEF

### (Cancellation of Registration of the Mark MEDITERRANEAN BARBECUE SPECIAL)

76.    Plaintiffs repeat each allegation contained in paragraphs 1 through 75 as though set forth  herein at length.

77.    Prior to October 17, 2014, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian or their related company or their licensee had used the mark MEDITERRANEAN BARBECUE SPECIAL only intrastate (i.e., within California).

78.    Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian  knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for the mark MEDITERRANEAN BARBECUE SPECIAL on October 18, 2014.  Specifically, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately

27

THIRD AMENDED COMPLAINT

before the date of this statement," and further declared "The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit L, notwithstanding none of said Defendants had used or intended to use the mark MEDITERRANEAN BARBECUE SPECIAL in interstate commerce when making their filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order the Mediterranean Barbecue Special using telephone or other electronic media. Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

79.     Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's  statements were false representations regarding material facts.  Said Defendants knew or believed that the representations were false. Said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application.  The Trademark Examination Attorney reasonably relied thereon.  The trademark MEDITERRANEAN BARBECUE SPECIAL was registered on the Principal Register proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.  The USPTO relied upon said misrepresentations in registering the mark MEDITERRANEAN BARBECUE SPECIAL.  Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark.  Hence the mark should be cancelled for fraud on the

28

PTO and as being *void ab initio*.

80. Moreover, even if the mark MEDITERRANEAN BARBECUE SPECIAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., an out-of-ordinary combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises, rather than identifying Defendants as the source of said product, as alluded to by the Examining Attorney in their Office Action dated September 6, 2022.

81. Further, even if the mark MEDITERRANEAN BARBECUE SPECIAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(1) as it merely descriptive for a type or category of product, e.g., an out-of-ordinary combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises rather than identifying assignees as the source of said product, as alluded to by the Examining Attorney in their Office Action dated September 6, 2022.

82. Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 6934495 pursuant to 15 U.S.C. 1119.

## SIXTH CLAIM FOR RELIEF

**(Cancellation of Registration of the Mark THE BIG FAMILY MEAL – No. 4774503)**

83. Plaintiffs repeat each allegation contained in paragraphs 1 through 82 as though set forth  herein at length.

84. Prior to October 17, 2014, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian  or their related company or licensee or predecessor in interest had used the mark THE BIG FAMILY MEAL

THIRD AMENDED COMPLAINT

only intrastate (i.e., within California).

85.     Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for the mark THE BIG FAMILY MEAL, now registered on the Supplemental Register. Specifically, in their trademark application for trademark filed November 10, 2014, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," and further declared "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit N, notwithstanding none of said Defendants had used or intended to use the mark THE BIG FAMILY MEAL in interstate commerce when making their respective filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Big Family Meal using telephone or other electronic media.

86.     Between October 17, 2014, and March 30, 2021, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian  or their related company or licensee had used the mark THE BIG FAMILY MEAL only intrastate (i.e., within California).

87.  In their Section 8 Declaration of Use, filed on March 30, 2021, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian stated: "the mark is in use in commerce on or in connection with all goods/services,

30

THIRD AMENDED COMPLAINT

. . ., listed in the existing registration for this specific class[],'' and declared ''the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s).'' Exhibit N.  Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

88.   Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's  statements were false representations regarding material facts.  Said Defendants knew or believed that the representations were false. Said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application. The Trademark Examination Attorney reasonably relied thereon.  The trademark THE BIG FAMILY MEAL was registered on the Principal Register proximately as a result of said reliance, and renewed, to the detriment of the public generally and Plaintiffs in particular.  The USPTO relied upon said misrepresentations in registering the mark THE BIG FAMILY MEAL and renewing the registration.  Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark nor renewed it.  Hence the mark should be cancelled for fraud on the PTO and as being *void ab initio*.

89.   Moreover, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(3) as it generic for a type or category of product, e.g., ''a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption

31

on or off the premises" rather than identifying assignees as the source of said product, shown, by way of example, in Exhibit V.

90.    Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 6934496 pursuant to 15 U.S.C. § 1119.

## SEVENTH CLAIM FOR RELIEF

**(Cancellation of Registration of the Mark THE BIG FAMILY MEAL – No. 6934446)**

91.    Plaintiffs repeat each allegation contained in paragraphs 1 through 90 as though set forth  herein at length.

92.    Prior to November 18, 2021, Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian  or their related company or licensee had used the mark THE BIG FAMILY MEAL only intrastate (i.e., within California).

93.    Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian knowingly made false and material representations with an intent to mislead the USPTO when filing their trademark application for the mark THE BIG FAMILY MEAL, now registered on the Principal Register.  Specifically, in their trademark application for trademark filed November 18, 2021, said Defendants stated: "the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 10/17/2014, and first used in commerce at least as early as 10/17/2014, and is now in use in such commerce," "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement," and further declared "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application," Exhibit P, notwithstanding

32

THIRD AMENDED COMPLAINT

none of said Defendants had used or intended to use the mark THE BIG FAMILY MEAL in interstate commerce when making their respective filing, but instead had used and intended that such mark be used only in their restaurants in the Los Angeles area and to sell a "combination meal consisting of meats, including chicken with side dishes for consumption on or off the premises" to customers in their restaurants in the Los Angeles area or to customers within said area who order The Big Family Meal using telephone or other electronic media.   Notwithstanding their lack of use of the mark in interstate commerce, said Defendants declared under penalty of perjury the mark was being used in interstate commerce (i.e., interstate or between the U.S. and a specified foreign country).

94.    Defendants Dikran Iskenderian, Steve Iskenderian, Ara Iskenderian, and Vartkes Iskenderian's  statements were false representations regarding material facts. Said Defendants knew or believed that the representations were false. Said Defendants made the false statements with the intent to induce reliance of the Trademark Examination Attorney upon the misrepresentations in the examination of the trademark application, and the Trademark Examination Attorney reasonably relied thereon. The trademark THE BIG FAMILY MEAL was registered on the Principal Register proximately as a result of said reliance, to the detriment of the public generally and Plaintiffs in particular.   The USPTO relied upon said misrepresentations in registering the mark THE BIG FAMILY MEAL.  Had said Defendants revealed that the mark was not used and was not intended to be used the mark in interstate commerce, the USPTO would not have registered the mark.  Hence the mark should be cancelled for fraud on the PTO and as being *void ab initio*.

95.    Moreover, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. §

33

THIRD AMENDED COMPLAINT

1064(3) as it generic for a type or category of product, i.e., "a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption on or off the premises" rather than identifying assignees as the source of said product, as shown, by way of example, in Exhibit V.

96. Further, even if the mark THE BIG FAMILY MEAL were used in interstate commerce either before or after the application for registration was filed or the mark was registered, the mark should be cancelled pursuant to 15 U.S.C. § 1064(1) as it merely descriptive for a type or category of product, i.e., "a combination meal consisting of meats, including chicken and kebabs with side dishes for consumption on or off the premises," rather than identifying assignees as the source of said product as shown, by way of example, in Exhibit V.

97. Accordingly, Plaintiffs are entitled to an order directing cancellation of Registration Number 6934496 pursuant to 15 U.S.C. § 1119.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment of Co-Ownership of the Mark TARNA)

98. Plaintiffs repeat each allegation contained in paragraphs 1 through 97 as though set forth herein at length.

99. From approximately 1984 when the Iskenderian family opened its Zankou Chicken restaurant in the Los Angeles area until the present, family members, including Plaintiffs and Defendants, have used "tarna" as the name of a popular dish, also commonly referred to as "chicken shawarma," comprising marinated chicken that turns on a spit similar to another popular Mediterranean dish, steak shawarma. By operation of law, the Iskenderian family developed and held common law trademark rights to the mark TARNA. Furthermore, and alternatively, such rights, either explicitly or implicitly, belonged to the same 2002 Markrid Iskenderian Living Trust that was subject to the Superior Court's Statement of

THIRD AMENDED COMPLAINT

Decision After Court Trial on Probate Code Section 850 Petition in 2006. Notwithstanding such rights at common law or pursuant to the Superior Court's Statement of Decision After Court Trial on Probate Code Section 850 Petition in 2006, belonged to the Iskenderian family, including Plaintiffs and Defendants. Defendants Mardiros Iskenderian  and his successor-in-interest Rita Iskenderian applied for and received a federal registration for TARNA in the name of Rita Iskenderian only.  To the extent the registration of TARNA was legitimate, it was done on behalf of the entire family, i.e. as constructive trustee for the benefit of the entire family, not just Mardiros ISKENDERIAN or his family.

100.  Alternatively, rather than seeking cancellation of  the registration of TARNA on the Principal Register of the USPTO, Plaintiffs request the Court to declare that the mark TARNA is jointly and severally owned by Plaintiffs and Rita Iskenderian as common law trademark co-owners and/or as direct or indirect beneficiaries of the 2002 Markrid Iskenderian Living Trust, and order that Registration Number 2296196 be amended to reflect said ownership.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment of No Trademark Infringement)

101.  Plaintiffs repeat each allegation contained in paragraphs 1 through 100 as though set forth  herein at length.

102.  Defendants through theirs attorneys by letter dated July 3, 2025, attached hereto as Exhibit Q, alleged that Plaintiffs have unlawfully used RIF Defendants' registered trademarks, including TARNA, THE MEDITERRANEAN FEAST, WRAP VARIETY PACK, KABOB VARIETY PACK, MEDITERRANEAN BARBECUE SPECIAL, and THE BIG FAMILY MEAL, and have threatened legal action if Plaintiffs do not comply with Defendants' demands to cease and desist use of such trademarks.  Plaintiffs' have not and do not infringe

THIRD AMENDED COMPLAINT

any lawfully obtained mark owned by Defendants.  As a result of said July 3, 2025, letter, Plaintiffs have a reasonable apprehension that they will be sued by Defendants for trademark infringement.  Thus this dispute is sufficient for the Court to invoke jurisdiction pursuant to 28 U.S.C. § 2201(a) which provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations  of  any interested party seeking such declaration, whether or not further relief is or could be sought."

103.   Plaintiffs seek and are entitled to a declaratory judgment that they do not infringe any of the enumerated trademarks.

104.   This is an exceptional case for which Plaintiffs seek an award of their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## TENTH CLAIM FOR RELIEF

### (Trade Defamation Against All Defendants)

105.   Plaintiffs repeat each allegation contained in paragraphs 1 through 104 as though fully set forth at length herein.

106.   For the express purpose of damaging Plaintiffs, Defendants have made and published statements on their Zanckouchicken.com website that Plaintiffs' food and/or operations "are inferior in quality and product."

107.  Plaintiffs are informed and believe and based thereon allege that Defendants either made or caused others to knowingly make and post negative statements about Plaintiffs' restaurant operations, including their food, menu and cleanliness, that were false, misleading and defamatory on various social media and restaurant review platforms for the purpose of harming plaintiffs, such as the following by way of example:

THIRD AMENDED COMPLAINT

1. That Plaintiffs' restaurants are "fake";

2. That Plaintiffs' restaurants are "spin-offs";

3. That Plaintiffs' restaurant locations are merely "franchised stores";

4. That Plaintiffs' restaurant operations are "not the real Zankou"; and

5. That the only way to have the "real" Zankou Chicken, you should go to only to the locations owned by Defendants.

108. Defendants knew and intended that customers and potential customers of Plaintiff's restaurants would act in reliance on these false and misleading statements, to Plaintiffs' loss and damage.

109. Plaintiffs have, in fact, suffered financial loss and damage because customers and potential customers relied upon these false and misleading statements when deciding which Zankou Chicken location to patronize for in-restaurant or take-out dining, in an amount to be established at trial.

110. Defendants' actions were knowing, intentional and deliberate, designed and intended to cause harm to Plaintiffs' business in knowing violation of Plaintiffs' rights. Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and by way of example.

## ELEVENTH   CLAIM FOR RELIEF

### (Unfair Competition Pursuant to the Lanham Act)

### (Against All Defendants)

111. Plaintiffs repeat each allegation contained in paragraphs 1 through 110 as though set forth  herein at length.

112. Defendants' actions as alleged above at Paragraph 107 were intended to characterize Plaintiff's restaurant operations as not authentic Zankou Chicken restaurants but rather restaurant operations which are separate and inferior, or

37

THIRD AMENDED COMPLAINT

franchised locations, not legitimately operating under the ZANKOU CHICKEN service mark.  Such conduct constitutes an unfair business act and unfair and deceptive advertising within the meaning of 15 U.S.C. § 1125 (Section 43(a) of the Lanham Act).

113.  Further, Defendants have threatened to sue Plaintiffs for infringement of one or more of the trademarks referred to in paragraphs 19-27, all of which are invalid for the reasons set forth in the First through Seventh Claims for Relief.

114.  Defendants' actions have resulted in damages to Plaintiffs in the form of lost or unrealized patronage of prospective customers and others in an amount to be proven at trial.

115.  By stating on their zankouchicken.com website that only the restaurants that the Defendants' managed restaurants  "offer the unique experience you have come to love and expect for over 60 years," Defendants implied that Plaintiffs' restaurants do not do so, which constitutes an unfair business act within the meaning of 15 U.S.C. § 1125.

116.  Defendants' actions were knowing, intentional and deliberate, designed and intended to cause harm to Plaintiffs' business in knowing violation of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to an award of enhanced damages in an amount sufficient to punish and by way of example.

## TWELFTH   CLAIM FOR RELIEF

### (Unfair Competition, Business & Professions Code Section 17200)

### (Against All Defendants)

117.  Plaintiffs repeat each allegation contained in paragraphs 1 through 116 as though set forth  herein at length.

118.  Defendants' actions as alleged above at Paragraph 107  were intended to characterize Plaintiff's restaurant operations as not authentic Zankou Chicken

THIRD AMENDED COMPLAINT

restaurants but rather restaurant operations which are separate and inferior, and/or merely franchised locations, not legitimately operating under the ZANKOU CHICKEN service mark.  Such conduct constitutes an unfair business act and unfair and deceptive advertising within the meaning of Business & Professions Code Section 17200.

119.   Defendants' actions have resulted in damages to Plaintiffs in the form of lost or unrealized patronage of prospective customers and others in an amount to be proven at trial. Plaintiffs cannot ascertain the amount of damages from loss of unrealized income from prospective customers caused by Defendants wrongful acts and conduct without an accounting of Defendants' income and profits from their restaurant operations.

120.   By stating on their zankouchicken.website that <u>only</u> the restaurants that the Defendants managed "offer the unique experience you have come to love and expect for over 60 years," Defendants implied that Plaintiffs' restaurants do not do so, which constitutes an unfair business act within the meaning of Business & Professions Code Section 17200.

121.  On information and belief, Defendants' actions were knowing, intentional and deliberate, designed and intended to cause harm to Plaintiffs' business in knowing violation of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to an award of damages, in an amount to be proven at trial.

**THIRTEENTH  CLAIM FOR RELIEF**

**(Breach of Implied Duty of Good Faith and Fair Dealing )**

**(Against All Defendants)**

122.   Plaintiffs repeat each allegation contained in paragraphs 1 through 121 as though set forth  herein at length.

39

THIRD AMENDED COMPLAINT

123.    As a result of being both co-beneficiaries under the Trust and as a result of the Court-confirmed rights of Haygan Iskenderian (and through her and the late Dzovig Marjik, the other Plaintiffs) and the Defendants (through the late Mardiros Iskenderian), all Plaintiffs and Defendants at a minimum, owed one-another a duty of good faith and fair dealing (if not a fiduciary duty) to avoid engaging in any conduct or failure to act which would interfere with the right to the full use and benefit of the ZANKOU CHICKEN mark.

124.    Defendants' actions as alleged above prevented Plaintiffs from being able to "share and share alike in the use of the Zankou Chicken trademark," and constitute a breach of Defendants' duty of good faith and fair dealing owed to Plaintiffs as a co-mark holder.  This has caused damages to Plaintiffs in an amount to be proven at trial.

125.    Defendants' breaches of the duty of good faith and fair dealing  arising from their joint ownership of the ZANKOU CHICKEN  mark was knowing, intentional and deliberate, designed to block or otherwise prevent Plaintiffs from having and enjoying the equal benefit of co-owning said trademark, in knowing violation of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and by way of example.

## FOURTEENTH  CLAIM FOR RELIEF

### ( Imposition of a Constructive Trust )

### (Against All Defendants)

126.    Plaintiffs repeat each allegation contained in paragraphs 1 through 125 as though set forth  herein at length.

127.    Defendants have received an amount of undue income and net profits from their restaurant operations resulting from  their  wrongful conduct as alleged herein, and have thereby been unjustly enriched,  in an amount which cannot be

THIRD AMENDED COMPLAINT

ascertained without an accounting.  Defendants will continue to be unjustly enriched by retention of a portion of their income and net profits from utilizing the ZANKOU CHICKEN mark derived from their wrongful conduct,  unless the court orders an accounting

128.   Accordingly, Plaintiffs are entitled to the imposition of a constructive trust on the portion of Defendants' income and profits from their restaurant operations derived by their unlawful conduct in the amount established by the accounting requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

1.    For a judgment awarding compensatory damages to Plaintiffs in an amount to be proven at trial;

2.    For a judgment awarding punitive damages to Plaintiffs in an amount sufficient to punish Defendants and to deter further such conduct by way of example;

3.    For a permanent injunction prohibiting Defendants from denigrating Plaintiffs' Zankou Chicken restaurants or attempting to differentiate the Rita Iskenderian Family Defendants' Zankou Chicken restaurants from Plaintiffs' Zankou Chicken restaurants in any media or internet application whatsoever, including but not limited to Zankou.chicken.com;

4.    For a permanent  injunction requiring Defendants to allow the locations of Plaintiffs' Zankou Chicken restaurants in any and all marketing or advertising, including but not limited to Zankouchicken.com and in any and all apps which include the listing of Zankou Chicken locations;

5.    Cancellation of U.S. Trademark Registration No. 2296186;

THIRD AMENDED COMPLAINT

6.     Alternatively, that U.S. Trademark Registration No. 2296186 for the mark TARNA be amended to indicate joint ownership by Plaintiffs and Rita Iskederian;

7.     Cancellation of U.S. Trademark Registration No. 4802609;

8.     Cancellation of U.S. Trademark Registration No. 5272961;

9.     Cancellation of U.S. Trademark Registration No. 5272962;

10.    Cancellation of U.S. Trademark Registration No. 6934496;

11.    Cancellation of U.S. Trademark Registration No. 6934495;

12.    A declaration that Plaintiffs have not infringed Defendants' trademarks;

13.    For an accounting by Defendants of their income and their net profits from their restaurant operations;

14.    For the imposition of a constructive trust;

15.    A declaration that Defendant Zankou Enterprises, Inc. is the alter ego of the remaining Defendants, and that each of the remaining Defendants is jointly and severally liable for damages attributable to Defendant Zankou Enterprises Inc.

16.    A finding that this case is exceptional within the meaning of 15 U.S.C. § 1117 and a trebling of damages and corresponding award of attorneys' fees in Plaintiffs' favor;

17.    An award of costs in this action;

18.    Pre-and post-judgment interest for Plaintiffs' costs and fees and other damages as available under law; and

19.    For such other, further, or different relief as the Court deems just, proper and equitable

## DEMAND FOR JURY TRIAL

THIRD AMENDED COMPLAINT

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.


Dated:  April 23, 2026                                Respectfully submitted,


                                                 By:  _/s/ Steven E. Young_____

                                                       Steven E. Young
                                                       Duane H. Mathiowetz
                                                       PRACTUS, LLP

                                                       Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT